**Robin J. ROBBINS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 90–3909C.

United States Court of Federal Claims.

Sept. 9, 1993.

Chuck R. Pardue, Augusta, GA, for plaintiff.

John S. Groat, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, DC, with whom were James M. Kinsella, David M. Cohen, and Asst. Atty. Gen. Stuart M. Gerson, for defendant. Major Raymond Jennings, Dept. of the Army, of counsel.

## OPINION

HORN, Judge.

In the complaint filed in this court, plaintiff, Robin J. Robbins, claims that the

Army Board for Correction of Military Records (ABCMR) acted in an arbitrary and capricious manner when it upheld plaintiff's physical disability rating of 20%, which resulted in plaintiff's severance from the service with a lump sum severance payment. Robbins claims that he should have been medically retired with a physical disability rating of 30%, which would have entitled him to retirement and retirement pay. Plaintiff also seeks out-of-pocket medical expenses, costs and attorney's fees.

Defendant submitted a motion for summary judgment, to which plaintiff responded by asking the court to deny summary judgment. Following a lengthy delay by the parties in filing the administrative record, the court ordered supplemental briefing by the parties. In his supplemental brief, plaintiff, for the first time, cross-moved for summary judgment.

The court finds that this case presents no material facts in dispute and that the case can be decided as a matter of law. The parties both have waived oral argument. After a complete review of the filings and the administrative record, the court concludes that the ABCMR was in error when it upheld the finding by the United States Army that plaintiff should be awarded a 20% disability rating. The court also finds that plaintiff is not entitled to reimbursement of his out-of-pocket medical expenses incurred while a civilian and that any amounts due under the applicable statutes should be computed by the parties and included in a proposed joint stipulation regarding damages to be filed with the court as described more fully in a separate order also issued on this date. Therefore, plaintiff's cross motion for summary judgment is **GRANTED** in part and **DENIED** in part and defendant's motion for summary judgment is **DENIED**.

### FACTS

Plaintiff, Robin J. Robbins, served in various branches of the military as an enlisted member from May 1954 until September 1966. Plaintiff was in the Marine Corps from May 27, 1954 to April 1958, in the Regular Army from April 19, 1960 to January 22, 1963, and in the United States Air Force from May 1963 to September 1966. Plaintiff held a reserve position in the Marine Corps from May 1, 1968 to April 19, 1970,[1] held a reserve appointment in the Air Force from October 1973 to a date not specified in the record and held a commission as a captain in the Army Reserves from January, 1977 to July 6, 1987. While on active duty in the Air Force, plaintiff injured his lower back as a result of two separate motor vehicle accidents in 1963 and 1965. Following the 1965 injury, plaintiff wore a back brace for two months and suffered intermittent back pain. Plaintiff was rated at 20% disabled under the Veterans Administration Schedule for Rating Disabilities (VASRD), but, nevertheless, was determined fit for duty. Thereafter, although considered fit for duty, plaintiff was granted a hardship discharge from the United States Air Force on September 16, 1966 in order to care for his ailing father-in-law.

Subsequent to his discharge, plaintiff became a Department of the Army civilian employee and served in various positions. In 1971, or in 1972,[2] while not on active duty, plaintiff underwent a "disk injection" for his back injury at the Southwest Texas Methodist Hospital in San Antonio, Texas. A December 12, 1973 Veterans Administration rating decision reported plaintiff with a 0% disability rating. Further, a pre-commissioning medical examination, conducted April 25, 1975, found plaintiff to be qualified for a commission and world-wide duty. This report specifically stated that plaintiff had "mild low-back pain with radiation into right leg every 2 months, not resulting in any lost time from work in past 2 years, evaluation by Orthopedics in Nov. 1973 (since which time patient's status has not changed)...." In conjunction with this ex-

---

**1.** In the Application for Appointment included in the record, the date reads 1960, but probably should be 1970.

**2.** The record includes several, different dates for this procedure.

amination, plaintiff stated that he was "in good health, taking no medication." Again, in a December 22, 1976 pre-commissioning physical, plaintiff reported that he was in "excellent health" and that there had been a "good result from injection of disk herniation.—no further problem." Plaintiff was, thereafter, appointed a Captain in the United States Army Reserve on December 28, 1976, which position he commenced in January 1977.

On November 4, 1980, while on civil service status, plaintiff underwent L4–5 disk surgery at a civilian hospital in Atlanta, Georgia, a procedure apparently not recommended by the Army. In a letter to his counsel, Chuck Pardue, Esq., plaintiff explained that, even after two civilian medical recommendations for back surgery, the Army had refused to recommend surgery. Therefore, plaintiff "went to a civilian doctor for surgery because it did not appear ... that I [plaintiff] would get proper consideration and treatment for my back condition at the Ft. Gordon Army Hospital."

On December 1, 1983, plaintiff was placed on Civil Service disability retirement for back pain which made him "unable to travel worldwide." At the time of retirement, plaintiff was rated at 40% disabled by the Veterans Administration. Plaintiff, however, continued to serve in the United States Army Reserve, and was on active duty on nine occasions between December 1983 and February 1985. In December 1983, plaintiff underwent a repeat fusion, with Knodt rods placed in his back.

In a June 22, 1984 medical history report conducted prior to his commission in the Army Reserve, plaintiff reported that he was in good health, but indicated that he was suffering from recurrent back pain. Plaintiff also noted the two back surgeries,

as well as the Veterans Administration's 40% disability rating. In 1984, while on active duty as a reservist, plaintiff sustained lower back pain during a flight to his station in the Republic of Korea. Plaintiff was medically evacuated from Korea to the United States and, thereafter, was apparently placed on the temporary disability retired list, while being medically processed for separation. As discussed more fully below, and as indicated in the report of the ABCMR's October 21, 1986 memorandum, plaintiff was "found to be 40 percent disabled, minus a 20 percent existed prior to service factor, for a net 20 percent rating."

The history of plaintiff's military disability processing is described immediately below.[3] According to Army Regulation No. 635–40, titled "PHYSICAL EVALUATION FOR RETENTION, RETIREMENT, OR SEPARATION," effective March 15, 1980, the procedure of disability processing begins with the soldier's military, primary medical care practitioner referring that member to a Medical Evaluation Board (MEBD) "if it appears the member is not medically qualified to perform [his/her] duty...." AR 635–40, ¶ 4–8. The MEBD in turn screens cases for possible referral to a Physical Evaluation Board (PEB). The individual case is referred to a PEB if the MEBD determines that "because of medical impairment, he may be unable to perform his duties...." AR 635–40, ¶¶ 4–11, 4–13. Furthermore, when a member is referred to a PEB, the MEBD is to "thoroughly evaluate and report his condition." *Id.*

According to AR 635–40, ¶¶ 4–19 and 4–20, the PEB conducts reviews both formally and informally. Each case is first reviewed by an informal PEB board, which only reviews the records of the individual member, but does not personally examine

---

3. Because numerous abbreviations are repeatedly used in the discussion, the following chart is offered to ease the reader's and the court's burden:

Abbreviations.
ABCMR—Army Board for Correction of Military Records
ADRB—Army Disability Review Board
APDAB—Army Physical Disability Appeal Board

DRC—Disability Review Council
EPTS—existed prior to entry service
MEBD—medical evaluation board
TDRL—Temporary Disability Retired List
USAPDA—US Army Physical Disability Agency
VASRD—Veterans Administration Schedule for Rating Disabilities.

the service member. The informal board must ensure that each case is complete and correct. If a member does not agree with the informal PEB findings, by virtue of AR 635–40, ¶ 4–19d(3), he/she may demand a formal hearing. At a formal PEB hearing, a member or his/her counsel "may testify as a witness, under oath, in his own behalf ... introduce witnesses, depositions, documents, or other evidence in his own behalf...." AR 635–40, ¶ 4–20e(2), (3). The formal PEB must then consider all the relevant evidence and give it the weight the board deems proper. AR 635–40, ¶ 4–201. Upon completion of its review, the formal PEB advises the member of its findings and recommendations.

After the PEB completes processing, the case file is forwarded to the United States Army Physical Disability Agency (USAPDA) for review and confirmation of the PEB's action by a disability review council (DRC). AR 635–40, ¶ 4–21a. The review by USAPDA is "confined to the case records and proceedings and related evidence." AR 635–40, ¶ 4–21b. The review is designed to ensure that:

(1) The person evaluated received a full and fair hearing.

(2) Proceedings of the medical board and the PEB were according to governing regulations.

(3) Findings and recommendations of the MEBD and the PEB were just, equitable, consistent with the facts, and in keeping with the provisions of law and regulations.

(4) Due consideration was given the facts and requests contained in any rebuttal to the PEB findings and recommendations submitted by, or for, the individual being evaluated.

(5) Records of the case are accurate and complete.

The DRC "will not recommend revision of PEB findings except when—(1) The evidence in the record is so clear and compelling as to require revision. (2) Accepted medical principles prevent a reasonable possibility of the PEB findings and recommendations being correct." AR 635–40, ¶ 3–9c. If the service member remains dissatisfied, he/she may appeal the findings of the USAPDA to the Army Physical Disability Appeal Board (APDAB). This appellate review is designed to determine whether:

(1) The member received a full and fair hearing.

(2) The evaluation proceedings conformed to current law and governing regulations.

(3) Findings and recommendations of the PEB, as changed or modified by the CG, USAPDA are supported by substantial evidence.

After referral by plaintiff's primary medical care practitioner, plaintiff's case was examined by the MEBD, which was convened on April 12, 1985. After an examination of plaintiff's records, the MEBD diagnosed plaintiff as "[s]tatus post lumbosacral fusion times two with residual chronic lumbosacral pain and right leg perineural fibrosis." Additionally, the MEBD specifically determined: (1) that the approximate date of origin of plaintiff's injury was 1963; (2) that the injury was incurred while plaintiff was entitled to basic pay; (3) that plaintiff's condition did not exist prior to service; and (4) that plaintiff's injury was permanently aggravated by service. As part of the evidence considered by the MEBD, Captain Jacques VanRyn, an orthopedic surgeon, recorded, in an April 2, 1985 narrative summary:

The patient had onset of his pain while on active duty in the Air Force as an enlisted man in 1963 when his car was rear-ended by another car. He sustained an injury to his back which caused considerable low back pain and some right leg pain at that period of time. He was treated with hospitalization and conservative therapy and gradually was able to regain ambulatory status and return to work. He had a second motor vehicle accident in 1965 when he was struck by a drunk driver. This time he was not rehabilitated as quickly and in fact took three months to regain a fully functional status. He again described low back pain with some right leg radiation. The pa-

tient resigned from service in 1966 but he had continued problems with intermittent low back pain and right leg pain even then resulting in 1980 of a diagnosis of herniated nucleus pulposus at L4–5 with an unstable vertebra at that level. From that point in time he had an L4–5 laminectomy and diskectomy and interbody fusion performed by Dr. Brown in Atlanta, Georgia. He was on civil service status at this point in time. He did not have a good take of his fusion and the area did not fuse. In December of 1983 he underwent a repeat fusion with Knodt rods placed in the back. He had fairly good results from that fusion but was placed on disability by the civil service and did not return to work. It is to be noted that upon termination of his service he was placed on 40% disability by the Veterans Administration.... The patient had received a direct commission into the Army in January of 1977. He was sent on temporary duty to Korea in August of 1984 which involved considerable walking and strain to his back and had reexacerbation of his back pain and pain down his right leg. He has had intermittent pain since that period of time which is becoming gradually progressive and over the last several months has become constant in nature....

\* \* \* \* \* \*

RECOMMENDATIONS:

It is felt that his condition is permanent. It is also to be noted that even though his surgery was performed as a civilian there was a sequelae of injuries that he had sustained in the service thus it is felt that this an [sic] injury that did start in service and is permanently aggravated by his recent tour of service.

Based on the evidence in plaintiff's record, the MEBD recommended that the plaintiff's case be referred to the Army Physical Evaluation Board (PEB) pursuant to AR 635–40, ¶¶ 4–11, 4–13.

Plaintiff's case first went before an informal PEB. In a January 31, 1986 report, plaintiff's disability was described as "[l]ow back pain, EPTS [existed prior to entry service], aggravated by service, with associated right leg perineural fibrosis; s/p lumbosacral fusion x2 (Med Bd Dg, NS)." The informal PEB also concluded that the disability was incurred while plaintiff was entitled to basic pay, incurred in the line of duty, and that the injury was the proximate result of performing duty. The informal PEB, for the first time, recommended a disability rating, as follows:

| Present rating | 40% |
| EPTS | 20% |
| --- | --- |
| NET | 20% |

Finally, the board found that plaintiff was "unfit for further service. Permanent disposition is considered appropriate." The informal PEB recommended that the plaintiff be "separated from the service with severance pay if otherwise qualified." Plaintiff disagreed with the findings of the informal PEB and demanded a formal hearing, with a personal appearance as allowed under AR 635–40, ¶ 4–19d(3). He also indicated that he would provide his own counsel at no expense to the government.

The formal PEB convened on August 28, 1986 to consider plaintiff's case. The formal board relied on both the plaintiff's record and testimony from the plaintiff and his counsel. Plaintiff's disability was again described as "[l]ow back pain, EPTS, aggravated by service, with associated right leg perineural fibrosis; s/p lumbosacral fusion x2 (med bd dg, NS; formal presentation)." The formal board also determined, as the informal board had done previously, that the disability occurred while plaintiff was entitled to basic pay, that it was incurred in the line of duty, and that the injury was the proximate result of performing his duty. The formal board, however, differed in its determination of plaintiff's disability rating and found that:

| Present Rating: | 40% |
| EPTS: | 10% |
| --- | --- |
| NET: | 30% |

The formal board also diverged from the informal board's findings and decided that although plaintiff was unfit for further service, his condition "has not stabilized and a period of time on the TDRL [Temporary Disability Retired List] is considered appropriate." At the close of the presentation of sworn testimony, the formal PEB issued the following statement:

MAJ Robbins, the board has examined all evidence, that which was available for the informal board and that which you and your counsel presented here today and after careful consideration of the evidence, the board finds you, MAJ Robin J. Robbins, physically unfit to perform the duties of your assigned office and grade because of physical disability which is rated at 30 per cent. The disability is indicated on the DA Form 199. The board recommends that you be placed on the TDRL with re-examination during May 1987.

Plaintiff was informed by the reporter for the formal board that "the recommendations of this board are subject to review by the Disability Review Council [DRC], which may either concur with the findings and recommendations of this board, recommend changes or modifications or return the case to an appropriate activity for further action." On September 22, 1986, plaintiff informed the president of the formal PEB that he agreed with the recommendations of the formal board. Plaintiff's case file was forwarded to the USAPDA for review and confirmation, in accordance with AR 635–40, ¶ 4–21a.

Notwithstanding the findings of the formal PEB, the DRC issued a revised evaluation on October 21, 1986. While the DRC concurred with the finding that plaintiff's disability was incurred while he was entitled to basic pay, was sustained in the line of duty and was the proximate result of performing duty, the committee found that plaintiff disability rating should be set at 20%, rather than 30%, because "[l]ow back pain, service incurred, worsened while not entitled to receipt of basic pay with no evidence of permanent service aggravation, present 40, Less EPTS 20 $ Net 20." As rationale for the revision of plaintiff's disability rating the DRC wrote:

A complete review of your case file confirms the fact that you are unfit, but this Agency finds that you are more appropriately rated at 20% IAW [in accordance with] applicable laws and regulation. Evidence indicates that your condition on discharge from the USAF was ratable at 20%. Your condition now equates to a ratable condition at 40%. Your medical records and OER's [Officer Evaluation Report] do not substantiate any finding of service aggravation and, thus, this 20% increase must be attributable to your civilian activities while not entitled to receipt of basic pay. As this 20% increase was incurred while not entitled to receipt of base pay and is not the proximate result of performing duty, that portion of your disability is not compensable IAW law and regulation. Your new rating is 20%. Your disposition is separation with severance pay as is required for all soldiers with ratings of less than 30% who have less than 20 years active service for retirement purposes. Your DA form 199 dated 28 August 1986 is hereby superseded.

Further, in a statement signed by the chairman of the DRC, the committee described its rationale as:

a. This soldier was initially injured on active duty in 1963 and 1965. From the evidence of record he was at 20% at that time. He increased to 40% over the years while not entitled to basic pay. While he did some reserve duty during this time there is no evidence of reduced performance. He was rated by VA at 40% on 26 April 1984 subsequent to his disability retirement from Civil Service. He since has had a number of tours of duty as a reserve officer during which he claims his back condition was aggravated. However, at the present time his condition is still at 40% showing no evi-

dence of permanent aggravation. Additionally, there is no evidence of reduced performance due to physical disability on any of these tours of duty including the one in Korea. Therefore I can not conclude or even stretch to a conclusion that there is recent permanent service aggravation.

On December 1, 1986, plaintiff's attorney sent a rebuttal to the Commander of the United States Army Physical Disability Board regarding the revised findings of the DRC. Plaintiff's case was then reviewed by the United States Army Physical Disability Appeals Board (USAPDA). On January 2, 1987, the five-member board unanimously agreed with the USAPDA's October 21, 1986, disability rating of 20%. In accordance with this ruling, on June 15, 1987, LTC D.A. McAdoo, Chief, Physical Disability Branch, sent a notice to plaintiff Robbins that plaintiff was to be discharged from the United States Army Reserve. Plaintiff was awarded $75,211.20 in severance pay, effective July 6, 1987, based on a physical disability rating of 20%.

Plaintiff submitted his application for correction of military records on July 18, 1987, requesting that his records be corrected to show permanent retirement for physical disability, at the rate of 30 percent, rather than separation with severance pay. A January 17, 1990 memorandum of consideration issued by the ABCMR denied plaintiff's request for correction. The ABCMR concluded:

1. The applicant's surgery in a civilian hospital in October and November 1986 was performed after the physical evaluation board proceedings on 21 October 1986 had been finalized.

2. Although the applicant did have a series of surgeries following the finalization of the physical evaluation board proceedings, this Board notes that these surgeries were performed in a non-military hospital for treatment not prescribed by the military.

3. In view of the foregoing, there is no basis for granting the applicant's request.

DETERMINATION: The applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice.

Thereafter, plaintiff filed a complaint in this court, requesting that the court find that the ABCMR "acted arbitrarily and capriciously and was not supported by substantial evidence in denying Plaintiff's Application for Correction of Military Records." Plaintiff requested that the court order that he be medically retired, retroactive to July 6, 1987, the date of his discharge. Plaintiff also requests that he be awarded his out-of-pocket medical expenses, unreimbursed dependant medical care expenses, which would have been covered had he been retired, in addition to litigation costs and attorney fees.

## DISCUSSION

Summary judgment in this court is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this Court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[4] Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Rules of this court provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of

---

**4.** As indicated above, the enactment of Pub.L. No. 102–572, 106 Stat. 4506 (1992), changed the name of the United States Claims Court to the United States Court of Federal Claims. In general, the Rules of this court are closely patterned upon the Federal Rules of Civil Procedure. Therefore, precedent under the Federal

Rules of Civil Procedure is relevant to interpreting the Rules of this court, including Rule 56. *See Imperial Van Lines Int'l, Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Deuterium Corp. v. United States,* 19 Cl.Ct. 697, 700 n. 3 (1990); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

showing that there is no genuine issue of material fact and of demonstrating it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Ass'n, Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

■ Disputes over facts which are not outcome determinative under the applicable law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury court return a verdict for the nonmoving party." *Id.; see also Unig Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Ass'n*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is placed on the nonmoving party to show that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Ass'n*, 20 Cl.Ct. at 679. If, under no scenario, can the nonmoving party present the evidence necessary to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Under Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to show that a genuine issue for trial exists. *Celotex v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

■ The fact that both parties have moved for partial or full summary judgment, based on the alleged absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d

905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "Simply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). *See also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d at 1391.

The Secretary's discretionary authority to correct plaintiff's military records stems from 10 U.S.C. § 1552(a) (1982), which reads:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

█ Accordingly, review by this court of an ABCMR decision is limited to determining whether a decision of the ABCMR is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations or mandatory published procedure by which a plaintiff has been seriously prejudiced. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.

1983) (quoting, *Clayton v. United States*, 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980)); *see also Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *De Cicco v. United States*, 230 Ct.Cl. 224, 228–29, 677 F.2d 66, 70 (1982); *Stephens v. United States*, 174 Ct.Cl. 365, 371–72, 358 F.2d 951, 954 (1966); *Ferrell v. United States*, 23 Cl.Ct. 562, 567 (1991). When reviewing under the arbitrary and capricious standard, this court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)). As stated in *Harris v. United States*, "... the traditional role of the court on review 'is to determine not whether the claimant was unfit for service at the time of his release, but rather whether the finding of the Secretary ... was so arbitrary, capricious or unsupported by evidence as to be contrary to the applicable principles of law.'" *Harris v. United States*, 177 Ct.Cl. 538, 541 1966 WL 8897 (1966) (quoting *Johnston v. United States*, 157 Ct.Cl. 474, 1962 WL 9299 (1962)). The function of this court is not to reweigh the evidence presented to the ABCMR. Rather, this court is charged with determining "whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

Narrow review is appropriate because "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (citing *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953)); *see also Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Gilligan*

v. *Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445–46, 37 L.Ed.2d 407 (1973); *Brenner v. United States*, 202 Ct.Cl. 678, 685–86, 1973 WL 21354 (1973), *cert denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974). As stated by the Court of Claims:

> Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions.

*Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813–14.

■ When contesting military personnel actions, a plaintiff bears a difficult burden and must overcome the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980); *see also Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813; *Guy v. United States*, 221 Ct.Cl. 427, 432–33, 608 F.2d 867, 870 (1979). Nevertheless, this principle of deference to agency construction of its own regulations, while fundamental, merely defines the framework for judicial analysis; it does not displace it. *See United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982); *United, States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Comm'n*, 390 U.S. 261, 272, 88 S.Ct. 929, 935–36, 19 L.Ed.2d 1090 (1968); *Newman v. Teigeler*, 898 F.2d 1574, 1576 (Fed.Cir.1990). Indeed, in circumstances such as the instant case where the ABCMR summarily rejects the formal PEB conclusions without articulating a rational firmly based in the record, less deference is due the determination of the board. *Beckham v. United States*, 392 F.2d 619, 622–23 (Fed.Cir.1968). Thus, the court, because it

is compelled to look at the record with little help from the Board's opinion need not accord as great weight to the Board's determination than otherwise would be appropriate. *Id.*

According to its own regulations, the ABCMR must "consider all applications properly before it for the purpose of determining the existence of an error or an injustice." 32 C.F.R. § 581.3(b)(2) (1986). The ABCMR is responsible for reviewing each application, along with the pertinent records of the applicant "to determine whether to authorize a hearing, recommend that the records be corrected without a hearing, or to deny the application without a hearing." 32 C.F.R. § 581.3(c)(5)(i). The Board may deny an application, as it did in the instant case, only if it "determines that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 581.3(c)(5)(ii). As stated in *Dodson v. United States Gov't Dept. of Army*, 988 F.2d 1199, 1204: "[s]uch legal error includes the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" *Id.* (citations omitted).

■ The statutes and regulations implicated in the instant case make clear that the ABCMR has a duty to determine whether there has been error or injustice, and, if there has been, the ABCMR must grant "thorough and fitting relief." *Id.* (citing *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 812–13, 817 (1979)). The decision of the ABCMR may be reviewed for failure to correct plain legal error committed by the military. *Id.; see also Grieg v. United States*, 226 Ct.Cl. 258, 266–67, 640 F.2d 1261, 1266–67 (1981).

This court's authority to review the ABCMR decision and accord appropriate relief has been specifically upheld by the United States Court of Appeals for the Federal Circuit in *Mitchell v. United States*. In that case, the court wrote:

> By statute, the Claims Court may, in appropriate military back pay cases, 'provide an entire remedy,' including 'restoration to office or position, placement in

appropriate duty or retirement status, and correction of applicable records.' 28 U.S.C. § 1491(a)(2). The Claims Court has, in fact, ordered back pay, (*Skinner v. United States*, 594 F.2d 824, 219 Ct.Cl. 322 (1979); *Sanders v. United States*, 594 F.2d 804, 219 Ct.Cl. 285 (1979); *Burd v. United States*, 19 Cl.Ct. 515 (1990); *Casey v. United States*, 8 Cl.Ct. 234 (1985)), restoration to military office, (*Skinner; Sanders; Yee v. United States*, 512 F.2d 1383, 206 Ct.Cl. 388 (1975); *Murphy v. United States*, 16 Cl. Ct. 385 (1989)), placement in correct retirement status, (*Gant v. United States*, 18 Cl.Ct. 442 (1989); *Casey*) an correction of military records, (*Skinner, Yee; Burd; Gant; Murphy; Casey*).

*Mitchell v. United States*, 930 F.2d 893, 896 (1991) (en banc).

■ Plaintiff contends, in his complaint and in his cross-motion for summary judgment, that the ABCMR acted arbitrarily, capriciously and contrary to its own regulations in denying plaintiff's application for correction of military records. Specifically, plaintiff disagrees with the Board's refusal to find that the USAPDA's reduction of his disability rating from 30% to 20% constituted error or injustice and, thus, should have been corrected pursuant to 10 U.S.C. § 1552(a) and 32 C.F.R. § 581.3(b)(2).[5] Defendant contends that plaintiff cannot meet his burden of proving that the ABCMR acted arbitrarily, capriciously or contrary to regulation. Defendant, therefore, requests that plaintiff's complaint be dismissed as a matter of law.

At issue is the ABCMR's affirmance of the DRC's October 21, 1986 downward revision of the 30% disability rating awarded plaintiff by the formal PEB to 20% when the decision of the formal PEB was reviewed by the USAPDA. Army regulation, AR 635–40, ¶ 3–9(c) mandates that:

---

5. Under the applicable statutes, plaintiff would have been entitled to retirement and retirement pay had his disability been rated at 30% or more. 10 U.S.C. § 1201 (1982). A disability rating of 20% entitles a service member only to separation and severance pay. 10 U.S.C. § 1203 (1982).

The DRC will not recommend revision of PEB findings except when—

(1) The evidence in the record is so clear and compelling as to require revision.

(2) Accepted medical principles prevent a reasonable possibility of the PEB findings and recommendations being correct.

This court finds that the ABCMR acted contrary to its own regulations by adopting the findings of the USAPDA. The ABCMR is required to correct military records if they find error or injustice. 32 C.F.R. § 581.3(2) (1986). Revision of a PEB finding by the USAPDA is expressly limited to those circumstances when the evidence in the record compels a revision or where accepted medical principles prevent the findings reached by the PEB. AR 635–40, ¶ 3–9(c). The USAPDA, however, failed to show either clear and convincing evidence present in the record to dispute the conclusions of the formal PEB or that medical principles forbade the PEB's finding. In fact, the record seems to support that the 30% service-connected disability rating found by the formal PEB is the appropriate rating. Therefore, in upholding the USAPDA's unsupported revision of plaintiff's disability rating, the ABCMR acted contrary to its own regulation requiring the correction of records to rectify a showing of error or injustice.

There appears to be no dispute in the record that plaintiff's total disability should be rated at 40%. The informal PEB, the formal PEB, the USAPDA, the APDAB and the ABCMR, agreed with the 40% rating. The dispute arises regarding what portion of the 40% should be attributed to non-service related injury and, therefore, deducted from the 40% to reach plaintiff's service-connected disability rating for the purpose of determining plaintiff's retirement status.[6]

---

6. The court also notes the following relevant Army regulation:

B–4. *Application of higher evaluations.* In view of the number of atypical instances, all cases are not expected to meet the criteria as specified in the VA Schedule. When a question arises as to which of two percentage

The ABCMR acknowledged that plaintiff had been involved in two automobile accidents while on active duty, and that plaintiff had to be medically evacuated from Korea because of lower back pain while on active duty. However, in reaching its decision to deny plaintiff's application, the ABCMR appears to have relied solely on the USAPDA's October 21, 1986 rating determination, and the USAPDA opinion, that plaintiff's condition was worsened by elective surgery, not by performance of military duty. In fact, the ABCMR's conclusions refer only to plaintiff's back surgeries and fail to take into account plaintiff's back aggravation while on active duty.

In the case at bar, the ABCMR appears to have denied plaintiff's application without reference to anything other than the USAPDA report and two advisory opinions both issued by the USAPDA. The only discussion of the earlier findings of the informal and formal PEB in plaintiff's case is in the procedural section of the ABCMR's memorandum of consideration. Yet, there is considerable evidence in the record directly opposing the USAPDA's determination, although the ABCMR and the USAPDA pay such evidence only lip service when explaining why plaintiff's disability rating should be reduced.

"If judicial review in the military retirement area is to have any meaning at all, an administrative determination based upon a mere statement of conclusions, where conflicting evidence is substantial, cannot be accorded the requisite finality." *Istivan v. United States*, 231 Ct.Cl. 671, 677, 689 F.2d 1034, 1038 (1982). Because the USAPDA based its opinion on an inadequate showing of the evidence, and the ABCMR relied on that opinion, this court finds itself in a position similar to that of the Court of Claims in *Beckham v. United States*. In *Beckham*, the court wrote, "there is no satisfactory showing on the record that the Board's determination was based upon a balanced consideration of all the evidence

available and presented. A naked conclusion and mere recitation that the opinion is based upon all the evidence without an analysis of the evidence in writing ... is inimical to a rational system of administrative determination and ultimately inadequate." *Beckham v. United States*, 183 Ct.Cl. 628, 636, 392 F.2d 619, 622 (1968) (citations omitted). In the instant case, the record is replete with evidence demonstrating that plaintiff's service-incurred injury was aggravated while he was on active duty, not only because of medical treatment he obtained on his own. Yet, as in *Beckham*, the ABCMR in the instant case has failed to make a satisfactory showing that it accorded a balanced consideration to such evidence.

For example, the USAPDA's conclusions, on which the ABCMR relied, reads,

> [e]vidence indicates that your condition on discharge from the USAF was ratable at 20%. Your condition now equates to a ratable condition at 40%. Your medical records and OER's do not substantiate any finding of service aggravation and, thus, this 20% increase [in disability rating] must be attributable to your civilian activities while not entitled to receipt of basic pay.

Additionally, the agency concluded that "there is no evidence of reduced performance due to physical disability on any of these tours of duty including the one in Korea. Therefore I can not conclude or even stretch to a conclusion that there is recent permanent service aggravation."

Contrary to the conclusory statements included in the USAPDA's report, the record in this case clearly demonstrates evidence of injury aggravation while on duty. First, the MEBD evaluation issued on April 2, 1985 specifically found that:

> He [plaintiff] was sent on temporary duty to Korea in August of 1984 which involved considerable walking and strain to his back and had reexacerbation of his back pain and pain down his right leg. He has had intermittent pain since that

---

evaluations should be applied, the higher evaluation will be assigned if the disability picture more nearly comes close to meeting the criteria for that rating. Otherwise, the lower rating will be assigned.
AR 635–40, App. B, ¶ B–4 (1980).

period of time which is becoming gradually progressive and over the last several months has become constant in nature. The MEBD also noted that, "even though his surgery was performed as a civilian there was a sequelae of injuries that he had sustained in the service thus it is felt that this an [sic] injury that did start in service and is permanently aggravated by his recent tour of service." Further evidence of plaintiff's service-connected aggravation of his injury is present in a June 18, 1985 officer evaluation report (OER). This report specifically states that plaintiff "[r]eceived medical profile that limited his work day to three hours a day. Metal implant in his spinal column was aggravated during this tour and a Physical Evaluation Board is considering his separation action." This OER also reports that in the latter part of plaintiff's tour, he was "normally under strong medication to alleviate his severe back pain." A formal PEB, after hearing direct testimony from plaintiff and reviewing his record, also found plaintiff's condition was aggravated by service. In sum, the evidence before the ABCMR and before this court reflects aggravation of plaintiff's service-incurred injury,[7] while plaintiff was on active duty. The evidence does not support the USAPDA's apparent conclusion that plaintiff's disability was based on aggravation due primarily to back surgery or natural progression, as proclaimed by the USAPDA, and affirmed by the ABCMR. Rather, based on the administrative record, the ABCMR should have adopted the findings of the formal PEB. In failing to adopt the PEB findings, the ABCMR decision was arbitrary, capricious, not supported by substantial evidence and, thus, should not be upheld by this court. Finding for plaintiff in accordance with the determinations of the formal PEB does not represent an unwarranted intrusion by this court into the affairs of the military. Rather, it is a finding that in its rejection of the PEB 30% disability rating, the ABCMR failed to follow the military's own procedures, as required by its own statutes, regulations and published guidelines.

Plaintiff, however, also includes a claim in his complaint, for which he offers little support in his later submissions to the court, that he should be "reimbursed for his out-of-pocket medical expenses incurred for his service connected condition."[8] Medical services are due an active service member as a matter of right under 10 U.S.C. § 1074(a) (1982).[9] The record indicates that plaintiff received medical attention, for which plaintiff was not compensat-

---

7. The Army regulation states:
   *B–11. Rating of disabilities aggravated by active service.** When considering cases involving aggravation by active service, the rating will reflect only the degree of disability over and above the degree existing at the time of entrance into the active service less natural progression occurring during active service with consideration for time in service as noted in paragraph 4–18e(3). This is true whether the particular condition was noted at the time of entrance into the active service or is determined upon the evidence of record to have existed at that time. It is necessary, therefore, in all cases of this nature to deduct from the present degree of disability, the degree, if ascertainable, of the disability existing at the time of entrance into active service, and natural progression that has accrued during active service, in terms of the rating schedule. The exception is that, if the disability is total (100 percent) and there has been service aggravation, the EPTS factor will be recorded, but no deduction in rating will be made. If the resulting differences is [sic] 0 percent, the condition cannot be considered service aggravated. Record the resulting difference on the rating sheet. If disability at the time of entrance into the service is not ascertainable in terms of the schedule, no deduction will be made.
   AR 635–40, APP. B, ¶ B–11.

8. The court notes that while this allegation was made in plaintiff's complaint, in subsequent filings with the court he accorded the issue minor attention at best. In his opposition to defendant's motion for summary judgment, plaintiff simply alleges that "[p]laintiff does have a right to civilian surgery when the Army refuses to provide needed surgery and when the Army has no ability on its own to provide said surgery." Plaintiff, however, does not support this conclusory statement with reference to any statute or regulation, or to any facts suggesting that the Army refused to treat plaintiff, or was unable to treat the plaintiff. In plaintiff's reply brief and cross motion for summary judgment, the issue of reimbursement for civilian surgery costs was not even raised.

9. Section 1074 states: "Under joint regulations to be prescribed by the Secretary of Defense and the Secretary of Health and Human Services, a member of a uniformed service who is on active duty is entitled to medical and dental care in

ed by the Army, in 1971, 1980, 1983, and on October 29, November 4, and November 20, 1986. The 1971 medical procedures occurred, however, while plaintiff was not on active duty. Plaintiff, therefore, is not entitled to compensation under 10 U.S.C. § 1074(a).[10] Although the remaining procedures occurred while plaintiff was serving in the Army Reserves on Active Duty Training, the plain language of 10 U.S.C. § 1074 states that the medical or dental care of the service member must be provided "in any facility of any uniformed service." It is undisputed that plaintiff's operations were performed in a civilian hospital by a civilian practitioner, and were not prescribed by the military medical staff. The court, therefore, finds them not compensable.

Plaintiff has also included a claim in his complaint for unreimbursed dependent medical care expenses incurred since his date of retirement. Given the court's finding that plaintiff is entitled to a 30% disability rating, any monies due for such unreimbursed dependent medical care expenses should be addressed in the proposed joint stipulation regarding damages to be submitted by the parties pursuant to the court's scheduling order, also issued this date.

In sum, this court concludes that the ABCMR erred when it upheld the decision of the USAPDA and the APDAB. Furthermore, the ABCMR failed to properly review and document its rejection of the record before it, particularly the report of the formal PEB, which rated plaintiff's disability at 30%. In the opinion of this court, the ABCMR, and the military review authorities, had no basis to reject the formal PEB's report. The formal PEB was the level of authority at which the decisionmakers had the benefit of a personal appearance by plaintiff in the context of a formal hearing. The formal PEB, therefore, had the opportunity to observe, the plaintiff as well as to review the record. The formal PEB decisionmakers are assigned the fact-

finding role in these executive branch proceedings. Their function is, thus, analogous to the trial court phase of federal litigation. The executive branch reviewing authorities, therefore, should have carefully reviewed the formal PEB findings and, if they chose to reject those findings, should have indicated clearly why they disagreed with the agency factfinders. In the instant case, although the formal PEB assigned plaintiff a 30% disability rating, the reviewing officials, including the members of the ABCMR, erroneously rejected that finding in favor of a 20% rating, without offering support for their decision. The record before this court is sufficient, however, for this court to uphold the formal PEB decision and to award plaintiff a 30% disability rating.

### CONCLUSION

Based on the above, the court, hereby, GRANTS plaintiff's motion for summary judgment, DENIES defendant's motion for summary judgement and directs that, in accordance with the findings of the Army's formal PEB, the plaintiff be retired with a 30% medical disability. The record before the court provides convincing proof that plaintiff was properly assigned a 30% disability rating by the PEB. In deciding otherwise the ABCMR ignored or misinterpreted the governing regulations and statute, and acted upon insubstantial evidence, or both. Moreover, the ABCMR failed to offer a factual or legal theory to support its 20% disability determination. Plaintiff is entitled to the 30% disability rating originally assigned by the PEB, and to concomitant disability retirement pay and benefits. The parties are directed to file with the court a joint proposed stipulation regarding damages on a date to be set by the separate scheduling order, also issued this date.

**IT IS SO ORDERED.**

---

*any facility of any uniformed service."* 10 U.S.C. § 1074(a) (emphasis added).

**10.** Plaintiff resigned from the United States Air Force in 1966 and was inactive in the armed

service until January 1977 when he was commissioned as a Captain in the Army Reserve. Plaintiff served in the Army Reserves until his July 6, 1987 discharge.