**Edward Larry DODSON,**
**Plaintiff–Appellant,**

v.

**UNITED STATES GOVERNMENT,**
**DEPARTMENT OF the ARMY,**
**Defendant–Appellee.**

No. 92–1183.

United States Court of Appeals,
Federal Circuit.

March 19, 1993.

Rehearing Denied April 14, 1993.

John D. Goldsmith, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, FL, argued for plaintiff-appellant.

Donna C. Maizel, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Also on the brief were Lieutenant Colonel W. Gary Jewell and Captain Jill M. Grant, Dept. of the Army, Office of the Judge Advocate, Arlington, VA, of counsel.

Before RICH, Circuit Judge, SMITH, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

Edward Larry Dodson appeals from the March 8, 1991 order of the United States

District Court for the Middle District of Florida (No. 87–1436–Civ–T–10A) granting the United States's motion for summary judgment and denying Dodson's motion for summary judgment. The order sustained the decision of the Army Board for Correction of Military Records (ABCMR), which held that Dodson's discharge and bar from reenlistment was not the result of probable material error or injustice. We reverse and remand.

## I.

The facts of this case though tortuous are not disputed. As of April 1982, Dodson was an E–6 Staff Sergeant in the United States Army, 25th Infantry Division, Hawaii. The Army inducted Dodson in 1965 and honorably discharged him two years later. Dodson enlisted in 1974. He was promoted to sergeant E–5 in 1976 and to staff sergeant E–6 one year thereafter. He reenlisted in February 1978, again in November 1980, and in 1981 he extended his enlistment for nine months, which established August 19, 1984 as his expiration of term of service date (ETS). Dodson served overseas in Vietnam from 1966 to 1967 and in Korea from 1978 to 1979. During his long period of service in the Army, Dodson received numerous awards and decorations.[1]

Pursuant to the Army's Qualitative Management Program (QMP), Dodson received his eighth annual enlisted evaluation report (EER) for the period May 1981 to April 1982, scoring 124 (EER 124) out of a maximum 125, the average score being 121. The QMP is used by the Army to screen enlisted soldiers' Official Military Personnel Files (OMPFs) to "[s]electively retain the best qualified soldiers" and "[d]eny reenlistment to [those who are] nonprogressive and nonproductive." Army Reg. 600–200, paras. 4–1, 4–2 (1982). Under the program the OMPFs of E–6 personnel, such as Dodson, are submitted to a regularly scheduled Promotion Selection Board. Army Reg. 600–200, para. 4–11.a. *"From the OMPF*, the board *will* evaluate past performances and estimate the potential of each soldier to determine if continued service is warranted." Army Reg. 600–200, para. 4–11.b (emphasis added). .

Sometime after receiving his EER, Dodson learned that a substitute rater mistakenly placed an EER 110 into Dodson's OMPF. Dodson's file, including the incorrect EER, was forwarded to the Promotion Selection Board for evaluation. When Dodson's EER 124 was later discovered at the base,[2] a personnel officer attempted to have the EER 110 returned and the EER 124 substituted, but was informed that Dodson had to appeal the EER to the EER Appeal Board,[3] which Dodson did.

On March 29, 1983, the Promotion Selection Board barred Dodson from reenlisting. In its letter of notification to Dodson, the board identified as the "basis" for the bar eight EERs, dating from Dodson's first in December 1975 to his last, which was the erroneous one of April 1982, and a 1966 nonjudicial punishment for theft of two T-shirts.

After the decision barring reenlistment, the EER Appeal Board in September 1983 ruled in Dodson's favor, invalidating the EER 110 and deleting it from Dodson's OMPF. The EER Appeal Board, however, did not complete Dodson's file by including his correct EER 124.

Dodson then attempted to appeal his reenlistment bar directly to the Army's Military Personnel Center (MILPERCEN), which oversees the QMP. MILPERCEN returned Dodson's appeal in November 1983 and directed him to submit it through his chain of command. Dodson asserts

---

1. Among Dodson's awards are the Vietnam Service Medal, the National Defense Service Medal, the Vietnam Campaign Medal, the Vietnam Cross of Gallantry Medal, the Army Good Conduct Medal, the Humanitarian Service Medal, two Non–Commissioned Officer Professional Development Ribbons, two Overseas Service Bars, and the Expert Qualification Badge.

2. The EER 124 document was again lost. However the Army does not dispute its existence.

3. Army Regulation 623–205 sets out the Enlisted Evaluation Reporting System. That regulation authorizes the EER Appeal Board to "[c]hange[ ] the soldier's official records, if appropriate." *See* Army Reg. 623–205, para. 4–3.d(1) (1984).

that when he attempted to appeal through his chain of command, his commanding officer gave him a direct order to wait until April 1984, when he was to return from an upcoming assignment in Korea.

In April 1984, Dodson submitted an "individual" appeal pursuant to Army Regulation 600–200, para. 4–15.a, to the Army Reenlistment Appeals Board, accompanied by recommendations from his commanders and notice of the correct EER 124. While this appeal was pending, the Army transferred Dodson, on April 16, 1984, from Hawaii to the 9th Infantry Division in Fort Lewis, Washington. Four days later, and before he left for Fort Lewis, Dodson's battalion personnel officer executed a nine month extension of Dodson's enlistment until May 19, 1985.

On November 9, 1984, the Reenlistment Appeals Board disapproved Dodson's appeal "based on [his] marginal performance of duty as reflected by his long history of below average enlisted evaluation reports, especially in [his] current grade."

After the Reenlistment Appeals Board disapproved Dodson's individual appeal, he attempted to obtain a "commander" appeal to a Reenlistment Appeals Board pursuant to Army Regulation 600–200, para. 4–15.c. His then-current battalion commander in Fort Lewis told Dodson that because he did not know him, Dodson should appeal through his former Hawaii commander; accordingly, Dodson returned to Hawaii at his own expense to pursue a commander appeal. On December 3, 1984, Dodson's former Hawaii battalion commander submitted a commander appeal to the Commander of the 25th Infantry Division, Hawaii, with the recommendations of three of Dodson's former superiors. Dodson however was notified that pursuant to Army regulations the commander appeal must occur where the soldier was stationed at the time of the appeal.[4] So, on December 7, 1984, the Commander of the 25th Infantry Division forwarded Dodson's commander

appeal to the Commander of the 9th Infantry Division for "review and action." Also in December 1984, Dodson returned to Fort Lewis where he persuaded his battalion commander there to submit a commander appeal to the Commander of the 9th Infantry Division. These commander appeals, however, were discontinued by MILPER-CEN on December 19, 1984 and never acted upon.

The Army honorably discharged Dodson on December 26, 1984, with a bar to reenlistment. Dodson again attempted to appeal the discharge and bar to MILPER-CEN,[5] but Dodson's appeal was rejected because he was no longer on active duty. MILPERCEN advised Dodson that he should appeal to the Army Board for Correction of Military Records (ABCMR).

On March 12, 1985, Dodson applied to the ABCMR, requesting that it void his discharge, and retroactively restore him to active duty with an award of back pay. He asked in the alternative that his bar to reenlistment be lifted, that his EER 124 be inserted into his OMPF, and that he be allowed to seek reenlistment. Dodson asserted that his discharge was unjust and flawed by material error for several reasons. First, he contended that the Promotion Selection Board had considered an invalid EER in instituting the bar. Second, he asserted that the Army had assigned him to Fort Lewis during his bar appeal, thereby violating Army regulations as well as prejudicing his ability to adequately appeal. Third, he contended that while his commander appeals were pending the Army discharged him in violation of Army regulations. Finally, he argued that the Army discharged him before his extended ETS of May 19, 1985.

The ABCMR denied Dodson's application without hearing on February 26, 1986. In its Memorandum of Consideration, the ABCMR listed in the evidence of record the following EERs:

---

4. No particular regulations for this requirement have been cited thus far.

5. MILPERCEN has authority over the QMP. MILPERCEN includes within it the various EER

Appeal Boards, the Army Promotion Selection Boards, and the Army Reenlistment Appeal Boards. *See generally* Army Regs. 600–200, 601–280, 623–205, 635–200.

| PERIOD | RATING |
|---|---|
| Sep 75 to Dec 75 | 118 |
| Jan 76 to Nov 76 | 102.5 |
| Dec 76 to Jun 77 | 110 |
| Jul 77 to May 78 | 121 |
| Jun 78 to Apr 79 | 101.5 |
| May 79 to Apr 80 | 116.5 |
| May 80 to Apr 81 | 118 |
| May 81 to Apr 82 | Unrated, EER Appeal |
| May 82 to Apr 83 | 120 |
| May 83 to Apr 84 | 120 |

The ABCMR had obtained two advisory opinions. One was from MILPERCEN which recommended that Dodson's request for reenlistment be denied based on his poor history of performance, consistent with the decision of the Reenlistment Appeals Board's decision in Dodson's individual appeal. The second was from the Office of the Judge Advocate General (JAG) which "opined that [Dodson's] bar to reenlistment was processed in accordance with applicable regulations, and that he was not denied any due process or other legal rights." The JAG believed that the transfer to Fort Lewis during the pendency of the individual appeal did not violate Dodson's rights because the Army regulation prohibiting such assignment was for the benefit of the Army, not the soldier, and therefore did not give soldiers any rights which could be violated. According to the JAG opinion, the transfer did not "substantially adversely" affect Dodson because the Reenlistment Appeals Board had before it the commander's recommendations when it denied Dodson's individual appeal. Lastly, the JAG stated that the Army did not violate any of Dodson's rights by discharging him before the expiration of his extension because the extension was a "mistake" which "was, if anything, to [Dodson's] benefit."

The ABCMR adopted the findings and conclusions of the JAG that none of Dodson's rights had been violated. The ABCMR concluded that the "apparent administrative errors" made in processing Dodson's appeals and in transferring him were not "fatal flaws of sufficient magnitude" to warrant corrective action. In doing so, it found that Dodson's performance had improved late in his career and that his commanders had recommended him favorably, but that this was "simply too little-too late" in light of Dodson's "overall performance and potential." The ABCMR determined that the Promotion Selection Board's reliance on the erroneous EER 110 did not provide a basis for corrective action because the board had cited seven other EERs and a nonjudicial punishment for theft. Finally, the ABCMR noted that the Reenlistment Appeals Board had reviewed Dodson's record after removal of the erroneous EER 110. Thus, the ABCMR denied the application, concluding that Dodson had failed to submit sufficient evidence to demonstrate the existence of probable material error or injustice.

On September 25, 1987, Dodson sued the United States in the United States District Court for the Middle District of Florida challenging the decision of the ABCMR and seeking, *inter alia*, reinstatement and back pay. The parties stipulated to have the matter decided by cross-motions for summary judgment. After the district court granted the Army's motion, Dodson appealed, asking this court to (1) lift the bar to reenlistment; (2) reenlist him, with full credit for time that would have been served had he not been improperly discharged, until such time as an Army Reenlistment Appeals Board considers his commander appeal; (3) award him back pay; and (4) order that the correct EER 124 be placed in his OMPF.

## II.

Because the district court sustained the decision of the ABCMR upon the parties' cross-motions for summary judgment, we review the decision of the district court *de novo*, reapplying the standard for summary judgment. *National Cable Television Ass'n v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1576 (Fed.Cir.1991). "Summary judgment is appropriate where the movant has established that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.; see* Fed.R.Civ.P. 56(c).

■ Two premises of law guide the disposition of this case. First, no one has a

right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation. *Maier v. Orr*, 754 F.2d 973, 980 (Fed.Cir.1985); *Austin v. United States*, 206 Ct.Cl. 719, 723–24 (1975). The Secretary of the Army *may* prescribe regulations for the acceptance of reenlistments. *See* 10 U.S.C. §§ 505(d), 508(b) (1988) (emphasis added). Accordingly, the Secretary has prescribed Army regulations setting out the Qualitative Management Program (QMP) by which the Army determines whom it will reenlist. *See* Army Regs. 600–200, 601–280, 623–205, 635–200. Although the Secretary was not required to promulgate the QMP regulations, having done so he is bound to follow them. *Harmon v. Brucker*, 355 U.S. 579, 582–83, 78 S.Ct. 433, 435–36, 2 L.Ed.2d 503 (1958); *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957); *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988); *Henneberger v. United States*, 403 F.2d 237, 242, 185 Ct.Cl. 614 (1968).

The second premise is judges do not run the Army. *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). Rather, "[t]he responsibility for setting up channels through which [personnel] grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates." *Id.* at 93–94, 73 S.Ct. at 540. Accordingly, Congress has empowered the Secretary of the Army, acting under procedures established by him and through a board of civilians, to "correct any military record of [the Army] when the Secretary considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1) (Supp.1989), and to "pay ... compensation ... if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his ... service in the Army," 10 U.S.C. § 1552(c) (1988).

Acting under the Secretary, the Army Board for Correction of Military Records considers "all applications properly before it for the purpose of determining the existence of an error or an injustice." 32 C.F.R. § 581.3(b)(2). The ABCMR reviews each application and the available military records "to determine whether to authorize a hearing, recommend that the records be corrected without a hearing, or to deny the application without a hearing." *Id.* § 581.-3(c)(5)(i). The ABCMR may deny an application without hearing "if it determines that insufficient relevant evidence has been presented to demonstrate the existence of *probable* material error or injustice." *Id.* § 581.3(c)(5)(ii) (emphasis added).

■ These statutes and regulations make clear that the civilian correction boards have a duty to determine whether there has been error or injustice and, if there has been, to grant thorough and fitting relief. *Sanders v. United States*, 594 F.2d 804, 812–13, 817, 219 Ct.Cl. 285 (1979) (*en banc*); *Yee v. United States*, 512 F.2d 1383, 1387–88, 206 Ct.Cl. 388 (1975). The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military. *Arens v. United States*, 969 F.2d 1034, 1037 (Fed.Cir.1992); *Grieg v. United States*, 640 F.2d 1261, 1266, 226 Ct.Cl. 258 (1981); *Sanders*, 594 F.2d at 813.[6] Such legal error includes the military's "violation of statute, or regulation, or published mandatory procedure, or unauthorized act." *Skinner v. United States*, 594 F.2d 824, 830, 219 Ct.Cl. 322 (1979); *see Arens*, 969 F.2d at 1040; *Voge*, 844 F.2d at 779.

■ But military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs. *Arens*, 969 F.2d at 1037. Hence, a soldier who has sought relief from a correction board is bound by its decision unless he can demonstrate by "cogent and clearly convincing evidence that the correction board acted arbitrarily,

---

6. The boards may also be reviewed for failure to correct an alleged injustice where factual, rather than legal, error has been committed by the military and the error is so shocking to the conscience that boards' failure to correct it rises to the level of legal error. *See Grieg*, 640 F.2d at 1266; *Sanders*, 594 F.2d at 813.

capriciously, contrary to law, or that its determination was unsupported by substantial evidence." *Id.; see Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir.1983); *Sanders*, 594 F.2d at 811; *Skinner*, 594 F.2d at 830.

### III.

Overall Dodson argues that, through an incorrect record placed into his OMPF—an EER 110—followed by a "Kafka[e]sque nightmare of Catch 22s, Army bungling, and the Army repeatedly violating its own regulations," the Army has erroneously barred him from reenlisting.

■ Dodson argues first that the ABCMR erred under the QMP by not correcting his OMPF to include the EER 124. He further argues that because the erroneous EER caused the reenlistment bar, the ABCMR should have further lifted the bar, reenlisted him, and awarded him back pay. The Army argues that substantial evidence supports the decision of the ABCMR that Dodson had been barred without probable material error or injustice because of Dodson's entire military history of below average performance. It contends that the Promotion Selection Board instituted the bar based on eight below average EERs, the erroneous EER being only one of them, that the Reenlistment Appeals Board did not rely on the EER 110 when it denied Dodson's individual appeal and affirmed the decision of the Promotion Selection Board, and that the ABCMR reconsidered the bar with the advice of MILPERCEN, thereby curing any procedural irregularities. Essentially, the Army argues, as the ABCMR found, that Dodson's evidence—one EER 124—is "simply too little-too late."

In this case, the Army has entirely bypassed the requirements of the QMP in barring Dodson. It is undisputed that "the individuals who had the legal responsibility [under the QMP] to rate [Dodson] and who were in a position to observe his performance on a daily basis," *Grieg*, 640 F.2d at 1267, gave him an EER 124. The EER 110

is not simply an "unfair" rating. It is a fiction, and the EER Appeal Board necessarily found to this effect in ruling in Dodson's favor. Under Army regulations, the Promotion Selection Board was required to render a decision from Dodson's OMPF. The procedurally defective rating rendered defective the OMPF that was before the Promotion Selection Board, and the Board explicitly told Dodson that it based the bar to reenlistment in part on his EER 110. This was the unfortunate, fortuitous result of the Promotion Selection Board rendering its decision before the decision of the EER Appeal Board, and the absence of coordination between the two boards. Further, the Reenlistment Appeals Board considered Dodson's appeal on an OMPF containing a third, admittedly erroneous EER—"Unrated, EER Appeal"—and the ABCMR addressed only the irrelevant question whether that EER would have made a difference over the EER 110.

■ The Army argues that, even if it did not fully comply with the QMP, Dodson is not entitled to relief because he has not shown that he was prejudiced, *see Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1057 (6th Cir.1983), and because the review by the ABCMR (with the advice of MILPERCEN) cured any procedural irregularities. We do not agree.

A soldier seeking correction of his records need not prove that, had his records been correct, the adverse personnel action would not have occurred. *Sanders*, 594 F.2d at 817; *Skinner*, 594 F.2d at 831. In other words, the test is not "but for." To require otherwise is to place an impossible burden on the soldier because the selection decision is highly discretionary and subjective, the proceedings of selection boards are secret, and the records of board proceedings are generally unavailable to soldiers. *Sanders*, 594 F.2d at 815–16.

The nature of these proceedings underscores the independence with which the military governs its personnel affairs. This court does not sit as a super-selection board making personnel decisions for the Army, *Skinner*, 594 F.2d at 829–30, and

neither may the ABCMR, *Sanders,* 594 F.2d at 817; *Sawyer v. United States,* 930 F.2d 1577, 1581 (Fed.Cir.1991) (distinguishing *Sanders*). The ABCMR reviews selection decisions for error; it does not, contrary to the Army's repeated assertion, make selection decisions on a *de novo* basis. Therefore, the ABCMR's mere consideration of a defective personnel decision does not cure the defect.

Nor will a *post hoc* advisory opinion given by a MILPERCEN administrator to the ABCMR cure an otherwise erroneous selection decision. The ABCMR may potentially "remedy" an error which it has found to have occurred in a selection decision by ordering a new selection board convened to make the decision *de novo. See Doyle v. United States,* 599 F.2d 984, 998, 220 Ct.Cl. 285 (1979). However, a simple advisory opinion by MILPERCEN does not "undertake the exhaustive reevaluation that a normal, regular selection board does." *See id.,* 599 F.2d at 1001.

In the present case, no one disputes that Dodson attained an EER 124. Yet remarkably through all of Dodson's appeals the EER 124 was never placed in his OMPF. Rather, the Reenlistment Appeals Board, the JAG and MILPERCEN in their advisory opinions to the ABCMR, and the ABCMR itself all considered Dodson's case with an EER for the period in question, "Unrated, EER Appeal." The most critical item in a soldier's personnel file is his EER. "[I]f it is low or compares unfavorably with those of his peers, it is fatal to his chances of selection." *Skinner,* 594 F.2d at 831 n. 4; Army Reg. 623–205, para. 1–4.a (1984) (The EER system "largely determines the senior enlisted leadership of the Army."). Unexplained gaps in a personnel file also are highly prejudicial. *Sanders,* 594 F.2d at 819. Thus, we cannot agree with the Army that Dodson has suffered no prejudice as a result of the Army's violation of the QMP, or that the prejudicial error has been cured.

■ We are also convinced that the Army committed statutory and regulatory violations during the course of the administrative reviews of Dodson's case. Dodson argues that he was separated during the pendency of his commander appeal in violation of Army Regulation 600–200, para. 4–15.e (1982), which provides: "Once MILPERCEN receives a Commander's Appeal, the soldier will not be separated until action has been taken on the appeal." The Army claims that no violation occurred because MILPERCEN had not physically received the appeal by December 26, 1984, when Dodson was discharged. The Army also argues that Army Regulation 600–200, para. 4–15.e, does not confer a right on the soldier, but rather it is an option available to commanders, which as such does not give rise to a requirement that the Army follow its own regulations. The Army cites Army Regulation 600–200, para. 4–15.c, in support, which provides: "If the commander elects, he may appeal the bar to reenlistment on the soldier's behalf." Further, the Army argues that even if the Army violated the regulation, it was harmless error because the commander appeal added nothing to Dodson's individual appeal that was denied by the Reenlistment Appeals Board. Also, the Army argues, the ABCMR's comprehensive review of Dodson's appeal cured any procedural irregularities because the ABCMR has *de novo* review over personnel decisions.

The Army's arguments are without merit. First, the Army presented no evidence that MILPERCEN had not physically received the appeal in Washington, D.C. Rather, the record contains a memorandum recording a telephone conference of December 19, 1984, wherein MILPERCEN stated that it would not "retain to process Commander's Appeal." Second, although the commander *may* institute an appeal on the soldier's behalf, the regulations plainly state in mandatory language that once such appeal is instituted, the soldier *will not* be separated while the appeal is pending. The Army's unilateral discontinuance of the appeal and discharge of Dodson violated this regulation. The ABCMR's review, which does not appear to be as "comprehensive" as the Army characterizes it, did not cure the regulatory violation. Finally, because Dodson's individual appeal was tainted with error in that, among other

things, it was based on an incomplete OMPF, it cannot substitute for the undecided commander appeal.

Dodson argues that he was transferred pending his commander appeal in violation of Army Regulation 614–200, para. 2, which he argues prohibits reassigning soldiers who are barred from reenlistment until action has been taken on all appeals. Dodson asserts that the transfer prejudiced his ability to adequately pursue and monitor his commander appeal. Dodson had to return to Hawaii at his own expense because no one knew him at Fort Lewis. Having done this, Dodson's appeal was forwarded back to Fort Lewis because that is where Dodson was stationed. The Army offered no response to Dodson's claim that the Army violated Army Regulation 614–200, para. 2. We thus see no reason to disagree with Dodson.

■ Plainly, legal procedural error under the QMP was pervasive at every stage of the Army's decision to bar Dodson from reenlisting. We are convinced therefore that the ABCMR erred in failing to correct such procedural error. *See Clackum v. United States*, 296 F.2d 226, 229, 148 Ct.Cl. 404 (1960). "The integrity and objectivity of the rating system go to the very heart of the military establishment's effectiveness, and all we do here is to preserve it as the statutes and authorized procedures contemplate and mandate." *Skinner*, 594 F.2d at 830.[7]

■ Dodson also contends that the Army improperly discharged him on December 26, 1984, prior to his ETS of May 19, 1985, thereby violating 10 U.S.C. § 1169 (1982), which provides: "No regular enlisted member of an armed force may be discharged before his term of service expires, except— (1) as prescribed by the Secretary concerned; . . . or (3) as otherwise provided by law." *See also* Army Reg. 635–200 (1984). The Army does not argue that it properly discharged Dodson before his ETS. Rather, the Army says that the extension of Dodson's ETS from August 19, 1984 to May 19, 1985 was invalid because MILPERCEN itself did not sign the extension document. Therefore, argues the Army, it did not discharge Dodson before his ETS at all.

The Army's position is not supportable. The Army has not cited to us any regulation which would require that MILPERCEN execute Dodson's extension document. In contrast, Army Regulation 600–200, para. 4–7.a, plainly states that "Commanders having custody of personnel records may allow soldiers to extend their enlistment." The record before the ABCMR contained a notarized document purporting to extend Dodson's enlistment period on April 20, 1984, signed and sworn to by a Sgt. Caspers of the 25th Infantry Division, Hawaii. In its advisory opinion, the JAG justified the discharge to the ABCMR saying that the extension was a "mistake," not that it was invalid. Indeed, the "evidence of record" before the ABCMR included a nine-month extension granted on "20 Apr 84." Therefore, the Army violated 10 U.S.C. § 1169 in discharging Dodson prior to his ETS.

The ABCMR, making its own personnel decision as to Dodson's "overall performance and potential" and relying on two conclusory advisory opinions, one from the very body alleged to have erred, found that Dodson had *probably* not suffered any ma-

---

7. The Army has vigorously disputed this case on the merits, without asserting that it raises any non-justiciable issues. Nevertheless, we emphasize that we are reviewing the procedural regularity of the bar to reenlistment, not the substance of the Army's decision to bar Dodson from reenlisting, or the substance of a decision by the Army declining to accept Dodson's reenlistment. *See Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir.1990) (improper for court to rate soldiers according to their relative merit in order to decide whether Secretary complied with regulation); *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988) (improper for court to decide whether a soldier is substantively deserving of additional compensation); *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985) (improper for court to decide whether a person is physically fit for service); *Mindes v. Seaman*, 453 F.2d 197, 201–02 (5th Cir.1971) (discussing the factors for the reviewability of internal military affairs); McDaniel, *The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions*, 108 Mil.L.Rev. 89, 113–35 (1985) (reviewability depends on the "particular claim raised and the nature and breadth of discretion involved").

terial error. We cannot agree. Dodson's "military career was ... ruined through no fault of his own, but because of ... bureaucratic bungling. This was a clear error ... to [Dodson] but the Correction Board refused to exercise its authority and mandate, under statute and regulation, to correct it." Skinner, 594 F.2d at 828; 10 U.S.C. § 1552 (1988); 32 C.F.R. § 581.3.[8] We hold that undisputed evidence clearly and convincingly demonstrates that Dodson has suffered legal error, and that the ABCMR acted contrary to law in finding otherwise. The evidence being undisputed, a further proceeding before the ABCMR is not necessary. Accordingly, the judgment of the district court is reversed.

### IV.

Although judgment is for Dodson, his remedy is limited. Because no one has a right to enlist or reenlist in the armed forces unless specially granted one, an enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been so discharged. Maier, 754 F.2d at 983; Austin, 206 Ct.Cl. at 723; Clackum v. United States, 161 Ct.Cl. 34, 36 (1963). Further, we will not decide whether the Army would have exer- cised its discretion to reenlist Dodson, had legal error not occurred. That decision is properly for the Army, not the court. See Sargisson v. United States, 913 F.2d 918, 922 (Fed.Cir.1990). We can however remedy the legally defective process so as to put Dodson into the position that he would have been had the proper procedures been followed at the relevant times. Doyle, 599 F.2d at 996; see Neal v. Secretary of the Navy, 639 F.2d 1029, 1045 (3d Cir.1981).

Therefore, we conclude that Dodson is entitled to back pay and allowances to May 19, 1985, the date of his proper ETS, and we remand to the district court for a proper determination as to this amount.[9] In addition, we instruct the district court to order (1) that the correct EER 124 be placed into Dodson's official military personnel file; and (2) that if Dodson seeks reenlistment, the bar to his reenlistment be lifted and his application for reenlistment be considered anew.

REVERSED and REMANDED.

---

8. Because we conclude that the ABCMR erred under 10 U.S.C. § 1552, we do not decide the constitutional question whether Dodson's rights under the Due Process Clause of the Fifth Amendment were violated. See Neal·v. Secretary of the Navy, 639 F.2d 1029, 1041 n. 12 (3d Cir.1981).

9. This award is limited by the jurisdiction of the district court to $10,000. 28 U.S.C. § 1346(a)(2) (1988).