# United States Court of Appeals
# for the Federal Circuit

---

**VETERANS CONTRACTING GROUP, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1409

---

Appeal from the United States Court of Federal Claims in No. 2:17-cv-1015C, Judge Charles F. Lettow.

---

Decided: April 2, 2019

---

JOSEPH ANTHONY WHITCOMB, Whitcomb, Selinsky, McAuliffe, PC, Denver, CO, argued for plaintiff-appellant. Also represented by ANDREW R. NEWELL.

STEVEN MICHAEL MAGER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER, KARA M. WESTERCAMP.

---

Before LOURIE, DYK, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* DYK.

HUGHES, *Circuit Judge*.

Veterans Contracting Group, Inc., appeals from a decision of the United States Court of Federal Claims holding that the Department of Veterans Affairs did not act arbitrarily or capriciously when it cancelled a roof replacement solicitation set aside for service-disabled veteran-owned small businesses. Because the contracting officer acted rationally in requesting cancellation based on the record before him, we affirm.

I

A.

The government sets aside certain contracting opportunities for service-disabled veteran-owned small businesses (SDVOSBs). *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1973 (2016). Two agencies are responsible for managing procurements on SDVOSB set-aside contracts: the Department of Veterans Affairs (VA) and the Small Business Administration (SBA). The VA regulates its own procurements, while the SBA regulates the procurements of all other agencies. Although the VA and the SBA systems overlap in many respects, they are governed by different statutory provisions. *See* 38 U.S.C. § 8127 (VA); 15 U.S.C. § 657f (SBA). This appeal concerns the system run by the VA.

Under VA regulations, a business may only compete for SDVOSB set-aside contracts if it has registered with the VA's Center for Verification and Evaluation. *See* 38 U.S.C. §§ 8127(e)–(f); 38 C.F.R. §§ 74.11, 74.20. If the Center determines that a business qualifies as an SDVOSB, it adds that business to a centralized database called VetBiz. *See* 38 U.S.C. §§ 8127(e)–(f); 48 C.F.R. § 804.1102; 38 C.F.R. §§ 74.11, 74.20. During

procurement, contracting officers can only consider bids submitted by businesses listed on VetBiz. *See* 38 U.S.C. § 8127(e); 48 C.F.R. § 804.1102. If the business is not in the database when bidding closes, the contracting officer cannot consider its bid. *See* 38 U.S.C. § 8127(e); 48 C.F.R. § 804.1102.

A business is eligible to compete for SDVOSB contracts if one or more veterans "unconditionally" own a majority interest in the company. *See* 38 C.F.R. § 74.2(a) (VA); *see also* 13 C.F.R. § 125.12 (SBA). In 2017, the VA and the SBA applied different definitions of "unconditional" ownership.[1] According to the VA, ownership was unconditional if it was free from "arrangements causing or potentially causing ownership benefits to go to another." *See* 38 C.F.R. § 74.3(b) (2017). The VA exempted arrangements conditioned "after death or incapacity" from this limitation. *See id.* The SBA, on the other hand, disallowed any limitations on a veteran's ownership interest—including those premised on death or incapacity. *See Matter of The Wexford Grp., Int'l, Inc.*, SBA No. SDV-105, 2006 WL 4726737, at *6, *9–10 (June 29, 2006).

Even after the Center makes the initial determination that a business qualifies as an SDVOSB, eligibility continues to remain relevant. Verified businesses have an ongoing obligation to maintain their status, and the Center may remove any business which fails to comply with this obligation. *See* 38 C.F.R. §§ 74.15(b), (e). Generally, a business is entitled to notice and an opportunity to respond before the Center effects removal. *See id.* § 74.22. The regulations existing in 2017, however, provided for one narrow

---

[1]    The VA and SBA recently aligned their regulations regarding unconditional ownership. *See* Ownership and Control of Service-Disabled Veteran-Owned Small Business Concerns, 83 Fed. Reg. 48,908 (Oct. 1, 2018) (codified at 13 C.F.R. § 125).

circumstance under which the VA had to *immediately* remove a business from VetBiz: upon notice from the SBA that it has found the business ineligible to compete in its system. *See id.* § 74.2(e) (2017). The regulation provided the Center with no discretion with respect to removal in this scenario. *See id.*

B.

Ronald Montano, a service-disabled veteran, owns 51% of Veterans Contracting Group, Inc. (VCG). His ownership interest is subject to limitations in the event of his death or incapacity. In 2013, the Center determined that VCG qualified as an SDVOSB under the VA system and added VCG to VetBiz. The Center reaffirmed VCG's status each year until 2017.

On January 5, 2017, VCG learned that it was the lowest bidder on an SDVOSB set-aside contract issued by an agency working with the SBA. The second lowest bidder filed a bid protest challenging VCG's eligibility to compete for the contract. The SBA ultimately determined that, because of the limitations on his ownership interest in the event of his death or incapacity, Mr. Montano did not "unconditionally" own his interest in VCG. As a result, VCG did not qualify as an SDVOSB under the SBA system. The SBA informed the VA of its decision on July 18, 2017. Because VA regulations required the Center to remove any business found ineligible in an SBA proceeding, *see* 38 C.F.R. § 74.2(e) (2017), the VA removed VCG from VetBiz on July 21, 2017.

Before VCG's removal from VetBiz, the VA had issued solicitations for bids in two SDVOSB set-aside contracts, one for a roof replacement and one for a relocation effort. The application deadline for the roof replacement solicitation was July 28, 2017. The application deadline for the

relocation contract was August 2, 2017.[2] Realizing that bidding might close on these solicitations before it finished litigating its status as an SDVOSB, VCG sent the VA a letter on July 26, 2017, expressing its intent to seek a preliminary injunction. Although VCG's letter repeatedly referenced the relocation solicitation, it failed to mention the roof replacement solicitation.[3]

On July 28, 2017, hours before the 9:00 am deadline on the roof replacement solicitation, VCG filed a bid protest in the Court of Federal Claims. VCG did not request a temporary restraining order or injunctive relief in its complaint.

That same day, the contracting officer opened bids for the roof replacement solicitation. The lowest responsive bidder had proposed a cost 30% higher than the government's estimate. VCG had submitted a bid closer to the government's projected cost, but the contracting officer could not consider its bid because VCG was not listed in the VetBiz database on the day bidding closed. *See* 38 U.S.C. § 8127(e). Given the absence of any reasonable bids, the contracting officer drafted an email on August 1, 2017, recommending cancellation and reposting of the solicitation.

On August 5, 2017, five days after the contracting officer sought cancellation, VCG moved for a preliminary injunction on the roof replacement solicitation. On August 11, 2017, the VA informed the Court of Federal Claims of its intent to cancel the solicitation pursuant to

---

[2] The government later extended this deadline because of VCG's bid protest.

[3] Because VCG misspelled the email address of the bid protest division of the Department of Justice, the government disputes receipt of this letter. *See* Resp. Br. 5.

48 C.F.R. § 14.404-1(c)(6), which permits cancellation when "[a]ll otherwise acceptable bids received are at unreasonable prices." The VA finalized cancellation on August 22, 2017. Hours later, the Court of Federal Claims granted VCG a preliminary injunction restoring it to Vet-Biz.[4] *See Veterans Contracting Grp., Inc., v. United States*, 133 Fed. Cl. 613, 624 (2017) (*VCG I*). In its decision, the court specifically declined to address relief related to the roof replacement solicitation "[b]ecause the government has stated that the roofing solicitation is in the process of being cancelled and reissued," thereby rendering VCG's "claim with respect to that solicitation . . . moot." *Id.* at 624 n.11.

The Court of Federal Claims ultimately made the injunction permanent. *See Veterans Contracting Grp., Inc., v. United States*, 135 Fed. Cl. 610, 619 (2017) (*VCG II*). The court reasoned that, because the SBA and VA regulations had differed at that time on whether contingencies for death or incapacity would disqualify a business from SDVOSB status, the VA had acted arbitrarily and capriciously when it applied 38 C.F.R. § 74.2(e) in a mechanical manner. *See id.* at 618–19. The court, however, rejected VCG's claim that the contracting officer had acted arbitrarily and capriciously in cancelling the roof replacement solicitation.[5] *See id.* at 619–20. It noted that the contracting officer had followed normal procurement procedures. *Id.* at

---

[4]    The preliminary injunction only restored VCG to VetBiz prospectively. Restoration thus did not change VCG's eligibility as of the July 28 application deadline for the roof replacement solicitation.

[5]    Following cancellation of the roof replacement solicitation, VCG amended its complaint to challenge that decision.

619. Based on the information available to him at the time, he rationally determined that the government had not received any reasonable bids. *Id.* Because he could not have known that the Center had improperly removed VCG from VetBiz, the court held that the contracting officer's decision to cancel the solicitation was not arbitrary or capricious. *See id.* at 619–20.

VCG appeals the denial of its claim that the cancellation of the roof replacement solicitation was arbitrary and capricious. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the legal determinations of the Court of Federal Claims de novo and any underlying factual findings for clear error. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015). In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action "if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* A procurement decision fails under § 706 if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Id.* (internal quotation marks omitted) (quoting *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010)).

## A.

We first address whether the contracting officer's decision to cancel the roof replacement solicitation lacked any rational basis.[6] VCG contends that the VA should have

---

[6]  VCG also argues that the contracting officer violated procurement procedures when he requested cancellation. The only support it offers, however, is that the contracting officer "*should never have opened the bids in the*

held the solicitation open pending resolution of its suit because it was the lowest bidder. It argues that cancellation was irrational and subverted the government's statutory duty to award contracts to SDVOSBs. In response, the government asserts that the contracting officer rationally cancelled the solicitation based on the compelling reason that he had received no reasonable responsive and responsible bids.

The government has a duty to conduct fair procurements. *See Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1152 (Fed. Cir. 1994). An agency violates this duty "if its consideration of offers is found to be 'arbitrary and capricious toward the bidder-claimant.'" *Cent. Ark. Maint., Inc. v. United States*, 68 F.3d 1338, 1341 (Fed. Cir. 1995) (quoting *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203 (Ct. Cl. 1974)). A bidder-claimant carries the burden of demonstrating that an agency acted arbitrarily and capriciously during procurement. *See Parcel 49C*, 31 F.3d at 1153. To meet this burden, a bidder-claimant generally must show that the procurement decision lacked a "proper legal basis." *See id.* at 1154.

In *Parcel 49C*, for example, Parcel 49C met its burden of proof by showing that the government had "no rational basis" for cancelling a solicitation. *Id.* at 1153. It introduced overwhelming evidence that the rationale offered by the agency for cancellation was "merely a pretext for accommodating FCC's displeasure with the selection of Parcel 49C." *Id.* at 1151. The record showed that the agency's actual motivation was the hope of avoiding "a move to the less desirable southwest quadrant of Washington, D.C." *Id.* at 1153. Because the government cannot cancel a

---

*first place.*" Pet. Br. 14–15 (emphasis in original). Because VCG has waived the bid opening issue on appeal, *see infra* Part II B., we do not address this challenge.

solicitation solely to satisfy an agency's whim, we held that the cancellation was arbitrary and capricious. *Id.* at 1153–54.

Unlike the plaintiff in *Parcel 49C*, VCG has not shown that the contracting officer lacked any rational basis for cancelling the roof replacement solicitation. First, the record discloses a reasonable motivation for cancellation. While cancellation after bids have been opened is generally disfavored, a solicitation may be cancelled if "there is a compelling reason to reject all bids and cancel the invitation." 48 C.F.R. § 14.404-1(a)(1). A compelling reason may exist when "[a]ll otherwise acceptable bids received are at unreasonable prices." *Id.* § 14.404-1(c)(6). VCG's bid was not acceptable because VCG was not listed in the VetBiz database when bidding closed. *See* 38 U.S.C. § 8127(e). The only two acceptable bids proposed costs significantly higher than the government's estimate for the project. Thus, the contracting officer rationally determined that these prices were unreasonable. Under the circumstances, he had a compelling reason to request cancellation.

Second, there is no indication that this reason was a mere pretext to cover an improper motivation. Although VCG alleges that the contracting officer intended to subvert the government's statutory duties to SDVOSBs, it has offered no evidence that the contracting officer knew the Center had wrongfully removed VCG from VetBiz when he requested cancellation of the solicitation. VCG's July 26 letter to the VA only referred to the relocation solicitation and did not mention the roof replacement solicitation. It thus could not provide notice of VCG's intent to seek injunctive relief with respect to roof replacement solicitation. While the act of filing a bid protest on July 28 may have given the contracting officer some indication that VCG disputed its status, VCG's initial complaint requested no form of injunctive relief. VCG only moved for a preliminary injunction on August 5—eight days after bidding on the solicitation had closed and four days after the contracting

officer had first requested cancellation. In other words, when the contracting officer requested cancellation, he had no reason to expect the court would impose any limitations on his exercise of discretion. Moreover, because the Court of Federal Claims did not grant VCG's motion until after the solicitation had been fully cancelled, *see VCG I*, 133 Fed. Cl. at 624, nothing prevented the contracting officer from continuing to pursue cancellation once VCG moved for a preliminary injunction.

We also find it significant that, until the Court of Federal Claims granted judgment on the administrative record on December 15, 2017, the government had not conceded that the Center had acted arbitrarily and capriciously in removing VCG from VetBiz. Instead, it maintained that the Center had acted rationally given applicable regulatory guidelines. *See* 38 C.F.R. § 74.2(e) (2017). A contracting officer must act in consideration of circumstances as they exist at the time of his decision. *See Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (explaining that "[t]he agency must articulate a 'rational connection *between the facts found and the choice made*'" (emphasis added) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962))). At the time of his decision, the contracting officer was bound by the government's position on this issue and had to presume the Center had acted lawfully. That the Court of Federal Claims determined four months after cancellation that the Center had not acted lawfully thus does not retroactively render his actions irrational.[7]

---

[7]      The dissent contends that accounting for whether the contracting officer knew the Center had unlawfully excluded VCG from the database "effectively limits our review to whether the contracting officer acted in bad faith." Dissent at 3. We disagree. Rather than broadly holding

In sum, we find that the contracting officer had a rational basis to cancel the roof replacement solicitation. *See Palladian*, 783 F.3d at 1252. We therefore conclude that the contracting officer's decision to cancel the roof replacement solicitation was not arbitrary or capricious.

B.

that any agency action "based on an earlier, unlawful act is rational unless the agency official making the decision knew the earlier action was unlawful," Dissent at 3, our decision simply acknowledges that a contracting officer can only act within the scope of his authority and that, here, the contracting officer had no authority to consider VCG's bid. *See* 38 U.S.C. § 8127(e) (prohibiting the contracting officer from considering bids submitted by businesses not listed on VetBiz); *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1401–02 (Fed. Cir. 2016) (noting that "[a] Government agent must have actual authority to bind the Government to a contract" and that a contracting officer "has only that authority actually conferred upon him by statute or regulation" (internal quotation marks omitted) (quoting *CACI, Inc. v. Stone*, 990 F.2d 1233, 1236 (Fed. Cir. 1993))). While we can say in hindsight that the "VA would likely have awarded the contract to VCG had it not erroneously removed VCG from the database," *see* Dissent at 5, it does not change the fact that, at the time the contracting officer cancelled the solicitation, VCG was not listed on VetBiz. It would run contrary to precedent and fairness to find that subsequent, unanticipated circumstances retroactively rendered cancellation irrational when the contracting officer had no authority to consider VCG's bid, let alone award the contract to VCG, at the time he acted.

We next consider whether the contracting officer's decision to open bids on the roof replacement solicitation was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. VCG contends that the VA should never open bids once it receives a pre-award protest because such an action is contrary to procurement policy. VCG has failed to establish, however, that it raised the issue of bid opening before the Court of Federal Claims. It has accordingly waived this challenge on appeal. *See Nacchio v. United States*, 824 F.3d 1370, 1382 (Fed. Cir. 2016) ("We generally do not consider issues that were not clearly raised in the proceeding below.").

Even if VCG had preserved this argument, we still would find it meritless. VCG did not request injunctive relief until well after bids were opened. Because the contracting officer had no notice of any reason to postpone opening bids for the roof replacement solicitation, his decision to open bids on July 28, 2017, was not arbitrary or capricious.

## III

We have considered the parties' remaining arguments and find them unpersuasive. We conclude that the contracting officer's decision to cancel the roof replacement solicitation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. For these reasons, we affirm the decision of the Court of Federal Claims.

## **AFFIRMED**

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**VETERANS CONTRACTING GROUP, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1409

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-01015-CFL, Judge Charles F. Lettow.

---

DYK, *Circuit Judge*, dissenting.

I

In my view this is a simple case. Veterans Contracting Group, Inc. ("VCG") bid on a Department of Veterans Affairs ("VA") contract. As the government now concedes, VCG was improperly excluded from the database of eligible bidders. The VA contracting officer, acting pursuant to 38 U.S.C. § 8127(e), refused to award the contract to VCG, which had submitted an otherwise responsive (and lowest) bid, because VCG was not listed in the database. The majority agrees that the contract would likely have been awarded to VCG but for the VA's error in removing VCG from the database.

Nonetheless, the majority affirms.  That result, denying a contract to a preference-eligible contractor, can only be achieved by treating the contracting officer and the preparer of the database as though they were separate entities.  They were not.  Both were part of the VA and acted as agents of the VA.  *See* 38 U.S.C. § 8127(d) (providing that "a contracting officer of the Department shall award contracts" to small business concerns owned and controlled by veterans (emphasis added)); *id.* § 8127(f)(1) (providing that "the Secretary shall maintain a database of small business concerns owned and controlled by veterans"); *see also Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1401–02 (Fed. Cir. 2016) ("It is a well recognized principle of procurement law that the contracting officer, as agent of the executive department, has only that authority actually conferred upon him by statute or regulation." (quoting *CACI, Inc. v. Stone*, 990 F.2d 1233, 1236 (Fed. Cir. 1993))).

According to the majority, whether the VA's rejection of VCG's bid was arbitrary depends on who within the VA is responsible for the error: the contracting officer or the preparer of the database.  If VCG had been in the database and the contracting officer rejected VCG's bid by ignoring its listing in the database, rejecting VCG's bid presumably would have been arbitrary.  But here, since the contracting officer did not prepare the database, rejecting the bid was not arbitrary—even though the result is precisely the same.  It should make no difference which individual within the VA committed the error.

The majority reasons that the contracting officer's decision to reject VCG's bid and cancel the solicitation was rational because there is "no evidence that the contracting officer knew the [VA] had wrongfully removed VCG from [the database] when he requested cancellation."  Majority Op. at 9.  "At the time of his decision, the contracting officer was bound by the government's position . . . and had to presume [the VA] had acted lawfully" in removing VCG from the database.  *Id.* at 10.  In other words, the majority holds

that an agency's decision based on an earlier, unlawful action is rational unless the agency official making the decision knew the earlier action was unlawful. Under this approach, any agency decision based on an unlawful regulation would presumably be lawful, if, at the time, the agency official was unaware of the illegality. There is no support for the majority's approach, which would insulate much agency action from effective review.

By holding that the VA's actions were lawful because the contracting officer did not know of the unlawful error and thus lacked any "improper motivation," Majority Op. at 9, the majority effectively limits our review to whether the contracting officer acted in bad faith. But we have previously explained that "the APA standard of review . . . is not limited to fraud or bad faith by the contracting officer." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001). The VA rejected VCG's bid only because it wrongfully removed VCG from the database. That the contracting officer had no knowledge of that error or acted in good faith does not excuse the error.

The majority responds that "a contracting officer can only act within the scope of his authority" and that "[i]t would run contrary to precedent and fairness to find that subsequent, unanticipated circumstances retroactively rendered cancellation irrational." Majority Op. at 10–11 n.2. But VCG's erroneous removal was not a subsequent, unanticipated circumstance. The Claims Court's decision is not what made VCG's removal unlawful; it was unlawful from the beginning. The Claims Court's decision merely recognized the illegality. We have ordered a remedy for unlawful action even where the agency lacked knowledge of the illegality at the time. For example, in *Dodson v. United States Government*, 988 F.2d 1199 (Fed. Cir. 1993), the Promotion Selection Board concluded that an Army staff sergeant should be discharged and barred from reenlisting due in part to low scores on his annual enlisted

evaluation reports. *See id.* at 1201–03. Among those evaluations was an incorrect, low score that a substitute rater had mistakenly placed in the sergeant's personnel file for Board review. *See id.* at 1201. We held that the Army acted unlawfully in discharging the sergeant and barring him from reenlistment. *See id.* at 1205–06. That was so even though the Board that made the decision did not place the erroneous score in his file, and the incorrect score was invalidated and deleted from the sergeant's file only *after* the Board decision. *See id.*

## II

When an agency acts arbitrarily, as the VA did here by excluding VCG from the database, the agency's resulting action—rejecting the bid—must be set aside. *See Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1154 (Fed. Cir. 1994) (affirming an injunction that "restore[d] the posture of the Government and [the bidder] before the illegal cancellation" because it would "remove the taint of illegality from this procurement process"); *CACI, Inc.–Fed. v. United States*, 719 F.2d 1567, 1575 (Fed. Cir. 1983) (noting that where a bidder has been deprived of "the opportunity to have its bid considered solely on its merits," "[a]n injunction barring the award would correct this alleged injury since it would require the government . . . to repeat the bidding process under circumstances that would eliminate the alleged taint of the prior proceedings"); *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 203 (D.C. Cir. 1984) (holding that because the FBI unlawfully awarded a contract, the disappointed bidder had a right to require the FBI to reselect a contractor based on the best final offers previously submitted, even though "[c]onsiderable performance ha[d] already taken place under the [] contract"). Thus, where the agency commits an error that denies a bidder the opportunity to have its bid considered solely on the merits, the appropriate remedy must give the bidder that opportunity, placing it in the position it would have occupied but for the agency's error.

Our decision in *Marshall v. Department of Health and Human Services*, 587 F.3d 1310 (Fed. Cir. 2009), is also instructive. There, the Department of Health and Human Services admitted that it acted unlawfully when it hired a non-veteran instead of the plaintiff and conceded "that it would have selected [the plaintiff] for the position had it not erroneously removed his name from the list of candidates." *Id.* at 1311. On appeal, the question concerned the proper remedy. We held that "the appropriate remedy is for [the plaintiff] to be awarded this position. The fact that the agency filled the position with another employee in violation of the [Veterans Employment Opportunities Act] preferences is not an adequate reason to force the aggrieved veteran into a different position." *Id.* at 1317.

The underlying logic of these cases applies here: The VA would likely have awarded the contract to VCG had it not erroneously removed VCG from the database. The appropriate remedy is to place VCG in the situation it would have occupied had the VA not acted improperly.

I respectfully dissent.