Dyk, Circuit Judge, dissenting.
I
In my view this is a simple case. Veterans Contracting Group, Inc. ("VCG") bid on a Department of Veterans Affairs ("VA") contract. As the government now concedes, VCG was improperly excluded from the database of eligible bidders. The VA contracting officer, acting pursuant to 38 U.S.C. § 8127(e), refused to award the contract to VCG, which had submitted an otherwise responsive (and lowest) bid, because VCG was not listed in the database. The majority agrees that the contract would likely have been awarded to VCG but for the VA's error in removing VCG from the database.
Nonetheless, the majority affirms. That result, denying a contract to a preference-eligible contractor, can only be achieved by treating the contracting officer and the preparer of the database as though they *809 were separate entities. They were not. Both were part of the VA and acted as agents of the VA. See 38 U.S.C. § 8127(d) (providing that "a contracting officer of the Department shall award contracts" to small business concerns owned and controlled by veterans (emphasis added)); id. § 8127(f)(1) (providing that "the Secretary shall maintain a database of small business concerns owned and controlled by veterans"); see also Liberty Ammunition, Inc. v. United States , 835 F.3d 1388, 1401-02 (Fed. Cir. 2016) ("It is a well recognized principle of procurement law that the contracting officer, as agent of the executive department, has only that authority actually conferred upon him by statute or regulation." (quoting CACI, Inc. v. Stone , 990 F.2d 1233, 1236 (Fed. Cir. 1993) )).
According to the majority, whether the VA's rejection of VCG's bid was arbitrary depends on who within the VA is responsible for the error: the contracting officer or the preparer of the database. If VCG had been in the database and the contracting officer rejected VCG's bid by ignoring its listing in the database, rejecting VCG's bid presumably would have been arbitrary. But here, since the contracting officer did not prepare the database, rejecting the bid was not arbitrary-even though the result is precisely the same. It should make no difference which individual within the VA committed the error.
The majority reasons that the contracting officer's decision to reject VCG's bid and cancel the solicitation was rational because there is "no evidence that the contracting officer knew the [VA] had wrongfully removed VCG from [the database] when he requested cancellation." Majority Op. at 807. "At the time of his decision, the contracting officer was bound by the government's position ... and had to presume [the VA] had acted lawfully" in removing VCG from the database. Id. at 807. In other words, the majority holds that an agency's decision based on an earlier, unlawful action is rational unless the agency official making the decision knew the earlier action was unlawful. Under this approach, any agency decision based on an unlawful regulation would presumably be lawful, if, at the time, the agency official was unaware of the illegality. There is no support for the majority's approach, which would insulate much agency action from effective review.
By holding that the VA's actions were lawful because the contracting officer did not know of the unlawful error and thus lacked any "improper motivation," Majority Op. at 807, the majority effectively limits our review to whether the contracting officer acted in bad faith. But we have previously explained that "the APA standard of review ... is not limited to fraud or bad faith by the contracting officer." Impresa Construzioni Geom. Domenico Garufi v. United States , 238 F.3d 1324, 1333 (Fed. Cir. 2001). The VA rejected VCG's bid only because it wrongfully removed VCG from the database. That the contracting officer had no knowledge of that error or acted in good faith does not excuse the error.
The majority responds that "a contracting officer can only act within the scope of his authority" and that "[i]t would run contrary to precedent and fairness to find that subsequent, unanticipated circumstances retroactively rendered cancellation irrational." Majority Op. at 807-08 n.7. But VCG's erroneous removal was not a subsequent, unanticipated circumstance. The Claims Court's decision is not what made VCG's removal unlawful; it was unlawful from the beginning. The Claims Court's decision merely recognized the illegality. We have ordered a remedy for unlawful action even where the agency lacked knowledge of the illegality at the time. For *810 example, in Dodson v. United States Government , 988 F.2d 1199 (Fed. Cir. 1993), the Promotion Selection Board concluded that an Army staff sergeant should be discharged and barred from reenlisting due in part to low scores on his annual enlisted evaluation reports. See id. at 1201-03. Among those evaluations was an incorrect, low score that a substitute rater had mistakenly placed in the sergeant's personnel file for Board review. See id. at 1201. We held that the Army acted unlawfully in discharging the sergeant and barring him from reenlistment. See id. at 1205-06. That was so even though the Board that made the decision did not place the erroneous score in his file, and the incorrect score was invalidated and deleted from the sergeant's file only after the Board decision. See id.
II
When an agency acts arbitrarily, as the VA did here by excluding VCG from the database, the agency's resulting action-rejecting the bid-must be set aside. See Parcel 49C Ltd. P'ship v. United States , 31 F.3d 1147, 1154 (Fed. Cir. 1994) (affirming an injunction that "restore[d] the posture of the Government and [the bidder] before the illegal cancellation" because it would "remove the taint of illegality from this procurement process"); CACI, Inc.-Fed. v. United States , 719 F.2d 1567, 1575 (Fed. Cir. 1983) (noting that where a bidder has been deprived of "the opportunity to have its bid considered solely on its merits," "[a]n injunction barring the award would correct this alleged injury since it would require the government ... to repeat the bidding process under circumstances that would eliminate the alleged taint of the prior proceedings"); Delta Data Sys. Corp. v. Webster , 744 F.2d 197, 203 (D.C. Cir. 1984) (holding that because the FBI unlawfully awarded a contract, the disappointed bidder had a right to require the FBI to reselect a contractor based on the best final offers previously submitted, even though "[c]onsiderable performance ha[d] already taken place under the [ ] contract"). Thus, where the agency commits an error that denies a bidder the opportunity to have its bid considered solely on the merits, the appropriate remedy must give the bidder that opportunity, placing it in the position it would have occupied but for the agency's error.
Our decision in Marshall v. Department of Health and Human Services , 587 F.3d 1310 (Fed. Cir. 2009), is also instructive. There, the Department of Health and Human Services admitted that it acted unlawfully when it hired a non-veteran instead of the plaintiff and conceded "that it would have selected [the plaintiff] for the position had it not erroneously removed his name from the list of candidates." Id. at 1311. On appeal, the question concerned the proper remedy. We held that "the appropriate remedy is for [the plaintiff] to be awarded this position. The fact that the agency filled the position with another employee in violation of the [Veterans Employment Opportunities Act] preferences is not an adequate reason to force the aggrieved veteran into a different position." Id. at 1317.
The underlying logic of these cases applies here: The VA would likely have awarded the contract to VCG had it not erroneously removed VCG from the database. The appropriate remedy is to place VCG in the situation it would have occupied had the VA not acted improperly.
I respectfully dissent.